NOT FOR PUBLICATION [1]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 10-00045(FLW) |
| BARRY SINGER, | : | |
| | : | |
| Debtor, | : | |
| | : | |
| FAYE TREADWELL, | : | |
| | : | |
| Appellee, | : | OPINION |
| | : | |
| v. | : | |
| | : | |
| BARRY SINGER, | : | |
| | : | |
| Appellant. | : | |

**WOLFSON, United States District Judge:**

Appellant Barry Singer ("Debtor" or "Singer") appeals a final Order of the Bankruptcy Court dated December 2, 2009, granting summary judgment to Faye Treadwell ("Treadwell"), determining a debt to be nondischargeable under 11 U.S.C. § 523(a)(6), and denying Singer's motion to dismiss. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons that follow, the Court will affirm the decision of the Bankruptcy Court.

I.      BACKGROUND

The instant appeal arises from attempts by Faye Treadwell ("Treadwell"), widow of the late music executive George Treadwell, to collect on a judgment entered against Singer stemming from his violation of a permanent injunction issued by a New Jersey

District Court in July 1999. The judgment, emanating from litigation involving the trademark rights of The Drifters, a popular singing group in the 1950s and 1960s, has a long procedural history. The Third Circuit recently summarized that history as follows:

> The Drifters first appeared in 1953 and came under the management of George Treadwell the following year. George Treadwell hired and paid the individual performers as employees, replacing them frequently. For nearly two decades, The Drifters as an entity persisted, though the membership of the group was constantly in flux. George Treadwell passed away in 1959, and his wife, Faye Treadwell, took over management of the group.
>
> By 1970, The Drifters had largely ceased to perform in the United States, although their songs were still played on the radio. [Larry] Marshak, an editor for a rock magazine, saw this as an opportunity. Working with CBS Radio, which had shifted to an "oldies" format, Marshak reunited some of the former members of the group - those who had been replaced over the years by the Treadwells - for a series of reunion concerts. Capitalizing on the success of these concerts, Marshak signed the former members to exclusive management contracts and began marketing them as "The Drifters."
>
> Over the next three decades, Marshak continued marketing the Drifters in the United States. His efforts at promotion were occasionally interrupted by trademark infringement litigation - Faye Treadwell sued Marshak, and Marshak in turn sued other Drifters promoters - but these lawsuits were often inconclusive. By the late nineties, however, the litigation over The Drifters finally produced a decisive result: . . . in July 1999, Judge Politan determined that Marshak had acquired his rights to The Drifters mark by fraud and that Treadwell's rights to the Drifters were superior. [*Marshak v. Treadwell*,] 58 F.Supp.2d at 568, 575 [(D.N.J. 1999)]. Judge Politan enjoined Marshak and his company, RCI Management ("RCI"), from promoting groups performing under the name of The Drifters, *Marshak v. Treadwell*, No. 95-CV-3794 (D.N.J. Aug. 16, 1999) (order of contempt, permanent injunction, and accounting) ("Politan Injunction"), and [the Third Circuit] affirmed, [*Marshak v. Treadwell*,] 240 F.3d [184, 200 (3d Cir. 2001)].
>
> With the issuance of the injunction, Marshak should have been out of The Drifters business.

Marshak v Treadwell, 595 F.3d 478, 482-83 (3d Cir. 2009) (footnotes omitted).  As the Third Circuit went on to explain, however, Marshak and his associates, including Singer, began to reorganize his promotion business in such a manner as to complicate the effect of Judge Politan's injunction:

> Up until February 9, 2001, when the Politan Injunction was affirmed by a panel of [the Third Circuit], The Drifters had been appearing nightly at the Sahara Hotel and Casino with The Platters and The Coasters.  All three groups were provided by DCPM [a company formed by associates of Marshak and for which Marshak was officially retained as an employee], which had been assigned Marshak's rights to The Drifters under his employment contract.  Once the injunction became effective and Marshak lost his rights to The Drifters name, however, DCPM also lost its rights to The Drifters, and thus DCPM could only market The Platters and The Coasters.  Shortly thereafter, the Sahara show closed - The Drifters were the biggest box office draw of the three groups, and the show could not survive with only The Platters and The Coasters.
>
> Barry Singer, a longtime business associate of Marshak, had brokered the original deal between RCI and the Sahara prior to the issuance of the injunction.  Once the injunction barred The Drifters from appearing with the Platters and the Coasters, Singer attempted to obtain independent rights to The Drifters name, even going so for as to negotiate with Treadwell.  These efforts, however, were unsuccessful.
>
> In August 2001, around the time that Singer was attempting to secure independent rights to The Drifters mark, [Lowell] Davis, who had previously worked as an attorney for Marshak, approached [Charles] Mehlich, a co-owner of DCPM and Marshak's ex-accountant, and informed Mehlich that Odessa Hobbs, the widow of Elsbeary Hobbs, a past member of The Drifters, was interested in licensing the name "The Elsbeary Hobbs Drifters."  According to Davis, Odessa Hobbs had settled with Treadwell, and could now license the trademark.  Mehlich approached his partners at DCPM about this opportunity, but according to Mehlich, no one at DCPM thought it wise to pursue that particular license given the injunction against Marshak.  Singer, however, was interested.  Singer subsequently formed a new company, Singer Management, for the express purpose of acquiring the rights to The Elsbeary Hobbs Drifters.  He invited Mehlich to come in as co-owner of Singer Management.  Mehlich agreed, becoming an owner of DCPM and

> Singer Managment simultaneously.  In October 2001, the deal was completed - Singer Mangement entered into a license agreement with Odessa Hobbs to use The Elsbeary Hobbs Drifters mark.  By early 2002, the old Sahara show was reunited, with The Platters and The Coasters now playing alongside The Elsbeary Hobbs Drifters.
>
> On November 27, 2006, Treadwell filed a motion for contempt, alleging that Marshak and his associates had continued to infringe upon her Drifters mark in violation of Judge Politan's order.  The District Court issued its contempt decision on September 7, 2007 . . . .

Id. at 485.  The District Court had held, among other things, that the 1999 permanent injunction was not only enforceable against Marshak, but against those companies and employees connected to Marshak, including Singer, that continued to market The Drifters after the issuance of the injunction.  Id.  The Third Circuit subsequently affirmed that determination on appeal.  As to the contempt remedies awarded by the District Court, which had been limited by the District Court to attorneys' fees, the Third Circuit reversed, finding instead that Treadwell was entitled to the profits earned through the promotion of The Elsbeary Hobbs Drifters from 2001 through 2007, and remanded for an order of accounting.  Id. at 493-98.

On March 25, 2009, shortly before Third Circuit issued its decision affirming the District Court's finding of contempt, Singer filed a Petition in Bankruptcy under Chapter 7.  Thereafter, on July 13, 2009, Treadwell commenced the adversary proceeding that gives rise to the instant appeal, seeking an order declaring Singer's debt nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(6), and (a)(7).  Treadwell alleged that Singer's debt is nondischargeable under each of the cited subsections of § 523 because: (i) the debt arose from "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A); (ii) the debt arose from "willful and malicious injury by the debtor to another entity or to

4

the property of another entity," 11 U.S.C. § 523(a)(6); and the "debt is a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss," 11 U.S.C. § 523(a)(7).

The parties appeared before the Bankruptcy Court on November 9, 2009, for argument on Singer's motion to dismiss the claim of non-dischargeability and Treadwell's cross-motion for summary judgment. Following argument on the motions, the Bankruptcy Court granted Singer's motion as to Treadwell's claim under § 523(a)(7), finding that the civil fine imposed by the District Court in connection with Singer's contumacious conduct is dischargeable under subsection (a)(7) as it "is not payable to and for the benefit of a governmental unit." T15:15 - T16:2. However, the Bankruptcy Court denied Singer's motion to dismiss Treadwell's claim of non-dischargeability under § 523(a)(6), finding that Treadwell had sufficiently pled a cause of action. After considering Treadwell's cross-motion for summary judgment under subsection (a)(6), the Bankruptcy Court granted summary judgment in favor of Treadwell. Given the Bankruptcy Court's ruling as to Treadwell's claim under § 523(a)(6), the Bankruptcy Court declined to address Treadwell's claim that the attorneys' fees award and the as yet unquantified accounting for profits were likewise nondischargeable under §523(a)(2)(A). An Order was entered by the Bankruptcy Court on December 2, 2009. It is from that decision that Singer now appeals.

## II.    STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 157 (D.N.J.2005). In particular,

factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." *See* Fed. R. Bankr. P. 8013; *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir.1995); *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 203 (3d Cir.1995). Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 50 U.S. 602, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993). Conversely, legal conclusions from the bankruptcy court are subject to de novo or plenary review by the district court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir.1997); *Chemetron*, 72 F.3d at 345. Mixed findings of fact and conclusions of law must be broken down, and the applicable standards-"clearly erroneous" or de novo- must be appropriately applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102-03 (3d Cir.1981)).

       Singer does not challenge the factual findings of the Bankruptcy Judge on appeal. The Bankruptcy Court properly applied the doctrine of collateral estoppel, and therefore did not make any factual determinations. Singer takes issue with the legal determination that his infringement upon Treadwell's trademark was "willful and malicious" within the meaning of 11 U.S.C. § 523(a)(6) and that his infringement caused "injury" within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, this Court will exercise plenary review to ascertain whether the factual findings and record are sufficient to support the Bankruptcy Judge's determination as a matter of law. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d at 103 (holding that plenary review shall apply to lower court's "choice and

interpretation of legal precepts and its application of those precepts to the historical facts."). *See also In re Granoff*, 250 Fed. App'x 494, 495 (3d Cir. 2007) ("[D]etermining dischargeability of a debt arising from willful and malicious injury is a question of law.")

### III.    DISCUSSION

It is well established that a creditor objecting to the dischargeability of a debt bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the exceptions to discharge enumerated in 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Larson*, No. 08-1214 (KCF), 2009 WL 2144079, at * 5 (Bankr.D.N.J. Jul. 14, 2009). Section 523(a)(6), upon which Treadwell relies, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

Accordingly, for a debt to be held nondischargeable, § 523(a)(6) requires willful and malicious intent, in addition to a showing of injury.

"Federal law determines what constitutes 'willful' and 'malicious'" for the purposes of § 523(a)(6). *In re Larson*, 2009 WL 2144079, at *5 (citing *In re Little*, 335 B.R. 376, 383 (Bankr. N.D. Oh. 2005). *See also In re Pavlovskiy*, No. 05-2176 (KCF), 2007 WL 2048965, at *1 (Bankr. D.N.J. Jul. 11, 2007) (same). In 1994, "[t]he Third Circuit…defined an injury as willful and malicious when the actor purposefully inflicts the injury or acts in such a manner that he is substantially certain that injury will result." *In re Hawkins*, 231 B.R. 222, 228 (D.N.J. 1999) (citing *In re Conte*, 33 F.3d 303, 305 (3d Cir. 1994)). Subsequently, the Supreme Court decided *Kiwaauhau v. Geiger*, 523 U.S.

57 (1998), in which the Court considered whether a debt attributable to an injury that results from conduct that is negligent or reckless is dischargeable under § 523(a)(6) where an intentional act causes the injury.   The Supreme Court concluded that only those acts performed with the intent to cause the injury fall within the scope of § 523 (a)(6). *Kiwaauhau*, 523 U.S. at 63-64.  Justice Ginsberg, writing for a unanimous Court further explained, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability  takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id*. at 61.

   Here, the Bankruptcy Court concluded that Treadwell met her burden of establishing the requirements for non-dischargeability under § 523(a)(6) (i.e., that Singer's conduct in infringing upon "The Drifters" trademark in violation of the 1999 injunction was "willful and malicious" and that such conduct resulted in injury to Treadwell).  The Bankruptcy Court rejected Singer's contention that Treadwell could not prevail under § 523(a)(6) because Treadwell had failed to establish actual damages in the contempt proceeding.  The Bankrutpcy Court held that "[t]he imposition of attorney's fees alone without even getting to the Third Circuit's award of an accounting for profits is enough." T16:24 - T17:1.  In support of that determination, the Bankruptcy Court noted that even in the absence of an award for compensatory damages, courts have held that an award of attorney's fees gives rise to a nondischargeable judgment under subsection (a)(6). T17:1-5.  Further, the Bankruptcy Court noted that because damages arising from trademark infringement are difficult to quantify, statutory damages are available.  T17:6-14. The Bankruptcy Court reasoned that courts which have considered the issue of whether those statutory damages are nondischargeable under § 523(a)(6) in the absence of

8

actual damages have concluded that because statutory damages exist for the purpose of compensating plaintiffs for actual injuries those damages are indeed nondischargeable. Quoting the decision of a bankruptcy court in *In re Braun*, 327 B.R. 447, 451 (N.D.Cal. Jul. 27, 2005) as persuasive authority, the Bankruptcy Court noted that "harm necessarily follows from the act of infringing regardless of the infringer's state of mind when creating the infringing material." T17:15-22.  It is from that determination that Singer now appeals.

Singer contends that the Bankruptcy Court erred in finding his contempt judgment nondischargeable, arguing that because he did not act maliciously in violating the injunction and infringing upon Treadwell's trademark, and because Treadwell did not incur actual injury as a result of the trademark infringement, § 523(a)(6) is inapplicable. Singer does not deny that he acted willfully, conceding that "he was in contempt for willfully violating the injunction." Debtors' Brief at 5.  Rather, Singer argues his intentional trademark infringement in violation of the injunction was not "malicious" and that there was no injury. *Id*. at 3.

Since it is established that Singer acted willfully for the purposes of § 523(a)(6), this Court will first address the issue of malicious intent with regard to Singer's willful violation of the injunction and trademark infringement.  In deciding *Kiwaauhau*, the Supreme Court did not specify the requisite state of mind for an act to rise to the level of "malicious" under § 523(a)(6).  *See In re Reath*, 368 B.R. 415, 427 (Bankr. D.N.J., 2006); *In re Peterson*, 332 B.R. 678, 682 (Bankr. D. Del., 2005); *In re Conner*, 302 B.R. 509, 514 (Bankr. W.D. Pa., 2003).  Consequently, appellate courts have adopted either an objective

9

approach or a subjective approach to determine the culpability of the debtor.[1] *See In re Reath*, 368 B.R. at 427; *In re Peterson*, 332 B.R. at 682; *In re Conner*, 302 B.R. at 514. This Court need not decide whether to apply a subjective or objective standard to the case at bar, however, because Singer's act of purposeful trademark infringement amounts to irreparable injury as a matter of law. *See Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 125 (3d Cir. 2004) *cert. denied*, 125 S. Ct. 1975 (U.S. 2005) ("We have clearly held that 'trademark infringement amounts to irreparable injury as a matter of law.'") (quoting *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 237 (3d Cir. 2003)); *S&R Corp. v. Jiffy Lube Int'l Inc.*, 968 F.2d 371, 378 (3d Cir. 1992). Therefore, whether we evaluate Singer's culpability subjectively or objectively, there is no lack of certainty that infringing upon one's trademark will result in injury. Singer acted willfully and purposefully to infringe upon Treadwell's trademark. As a result, Treadwell suffered the injury of having her trademark infringed. Because this infringement is both the action Singer took and the injury Treadwell suffered, applying either an objective or subjective standard of culpability, Singer's conduct was clearly malicious.

In denying that his actions were "malicious" for the purposes of § 523(a)(6), Singer appears to reference the common understanding of malice as personal hatred, spite, or ill-will. This argument, however, is inapposite to the interpretation of "malicious"

---

[1] "Under the subjective approach, an injury is willful and malicious if the debtor caused harm through a deliberate action *with the belief that there was a* substantial certainty of injury. In contrast, under the objective approach, an injury is willful and malicious if the debtor caused harm through a deliberate action *with an objective* substantial certainty of injury." *In re Reath*, 368 B.R. at 427 (quoting *Peterson*, 332 B.R. at 682-83 (citing *Conner*, 302 B.R. at 515 n. 4)).

Following the Supreme Court's decision in *Kiwaauhau v. Geiger*, the Third Circuit referred to its pre-*Kiwaauhau* decision in *Conte* in adopting what could be termed an objective approach. *See In re Granoff*, 250 F. App'x 494, 495-96 (3d Cir. 2007) ("A debtor's actions are willful and malicious under § 523(a)(6) 'if they either have a purpose of producing injury or have a substantial certainty of producing injury.'"). Prior to *In re Granoff*, bankruptcy courts in this District also looked to *Conte*, and predicted the Third Circuit would most likely adopt the objective approach. *See In re Pavlovskiy*, 2007 WL 2048965, at *1; *In re Reath*, 368 B.R. at 426; *In re Peterson*, 332 B.R. at 682.

specific to the nondischargeability of debt under § 523(a)(6). To better illustrate the distinction, bankruptcy courts in this District have recognized malice where "the debtor's conduct [is] wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *In re Pearman*, No. 09-2186(KCF), 2010 WL 2509917, at *4 (Bankr. D.N.J. June 23, 2010) (quoting *Viener v. Jacobs* (*In re Jacobs*), 381 B.R. 128 (Bankr. E.D. Pa. 2008) (quoting Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* 523.12[2] (16th ed. 2009))).

Clearly, Singer knew that his actions were wrongful and without just cause or excuse. It was Singer's desire to secure rights to "The Drifters" trademark. To achieve this, Singer went as far as negotiating with Treadwell for rights to the mark. When negotiations failed and the opportunity to license the "The Elsbeary Hobbs Drifters" arose, Singer and an associate established Singer Management Consultants, Inc. for the express purpose of circumventing the injunction and acquiring the rights to "The Elsbeary Hobbs Drifters." This is undisputed.

> "As [Debtor] stated in his testimony, he knew that the injunction stood in the way of DCPM's ability to legally package The Coasters and The Platters with The Drifters to allow the three groups to perform together at the Las Vegas Sahara as they profitably did prior to the injunction. To circumvent the injunction, [Debtor] and Mehlich formed a company for the purpose of obtaining the rights to use the name The Elsbeary Hobbs Drifters."

[*Marshak v. Treadwell*, No. 95-3794, 2007 WL 2687454, at * 14 (D.N.J. Sep. 10, 2007).] As a result of this conduct, Singer was held in contempt. That finding of contempt, including the award of attorney's fees, was affirmed by the Third Circuit. *Marshak v. Treadwell*, 595 F.3d 478, 487, 498 (3rd Cir. 2009). Accordingly, both the District Court's finding that Singer was aware of the injunction and therefore in contempt for violating it,

11

and the Third Circuit's affirmance, conclusively demonstrate that Singer knew that by violating the injunction, he was infringing upon Treadwell's mark and thereby causing injury which necessarily flows from the infringement.

To justify his infringement and take it out of the realm of malicous conduct, Singer offers the excuse of having acted "based on advice of counsel." Brief of Debtor at 5. To support this argument, Singer cites *In re Wehri*, 212 B.R. 963, 969 (Bankr. D.N.D. 1997) and *In re Murray*, 116 B.R. 473, 474 (Bankr. E.D. Va. 1990). Those cases are inapposite. Here, Singer's reliance on counsel was neither reasonable, nor resulted in Singer's inability to act willfully. Lowell Davis, who is both Larry Marshak's former attorney, and the individual that purportedly advised Singer, was also held in contempt for "violat[ing] the letter, as well as the spirit and intent, of Judge Politan's injunction by engaging in an elaborate shell game through their creation of various business identities in an attempt to deceive Treadwell and the Court." *Marshak*, 2007 WL 2687454, at * 18.

Additionally, Singer cites several cases to support the argument that his willful violation of the injunction was not malicious; this Court does not find these cases convincing. In *In re Brown*, for instance, the court denied the plaintiff's motion for summary judgment on a similar adversary proceeding, not because the debtor's actions lacked malice, but because the lower court did not fully adjudicate the issue of intent. 331 B.R. 243, 251 (Bankr. W.D. Va. 2005) ("[T]here is not enough evidence from the record and state court hearings to preclude litigation of whether the debtor's actions were in fact malicious."). In *In re Zentz*, the court found a debt of attorney's fees dischargeable for lack of evidence that the debtor intended "to cause economic harm or that such harm was certain to be caused by her actions." 157 B.R. 145, 149 (Bankr. W.D. Mo. 1993). This is

factually distinguishable from the case at bar because the debtor in *Zentz* did not intend or expect the act of prohibiting her ex-husband from seeing his child would result in the injury, i.e. attorney's fees; whereas here, Singer's act of trademark infringement was substantially certain to cause harm to Treadwell. Similarly, *In re Reath* is distinguishable because the court found the debtor lacked the intent and malice to cause injury. 368 B.R. 415, 428 (Bankr. D.N.J. 2006) ("These facts do not support the conclusion that the debtor either caused harm to the plaintiff through a deliberate action with the belief that there was a substantial certainty of injury, or that the debtor caused harm through a deliberate action with an objective substantial certainty of injury."). Further Singer cites additional cases which were decided in favor of the debtors on facts significantly different from those presented on this record. *See generally In re Weber*, 99 B.R. 1001, 1004 (Bankr. D. Utah 1989) (declining to find debtor exhibited malicious intent where sufficient evidence existed showing that debtor attempted to repay creditor); *In re Friedman*, 253 B.R. 576, 577 (Bankr. S.D. Fla. 2000) (granting summary judgment in favor of debtor on count related to § 523(a)(7) and not deciding count related to § 523(a)(6)).

Singer argues that regardless of his willful actions, § 523(a)(6) does not apply because Treadwell did not suffer an injury. According to Singer, "[t]he lower court's determination that Faye Treadwell suffered no damages precludes recovery pursuant to 11 U.S.C. § 523(a)(6)." Brief on Behalf of Debtor at 9. Singer's reference in this regard is to Judge Debevoise's decision finding Singer and others in contempt of the injunction. This, however, is a misleading characterization of the adjudication of the contempt matter. "The District Court did not address the issue of remedies–the decision held Appellants in contempt, but remained silent on damages." *Marshak*, 595 F.3d at 493. Subsequently, the

District Court issued a Reconsideration Opinion in February 2008, removing the mandated accounting and treble damages, and leaving only the attorneys' fees. *Marshak v. Treadwell*, No. 95-3794, 2008 WL 413312, * 8-10 (D.N.J. Feb. 13, 2008). The Third Circuit reversed that portion of the District Court's decision and reinstated the accounting of profits. *Marshak*, 595 F.3d at 495 ("Despite laying out the evidence of this infringing conduct–and describing it as an 'elaborate shell game' crafted to evade the injunction–the District Court imposed remedies far less severe than those issued by Judge Politan. …This, we believe, was an abuse of discretion.")

Singer equates the fact that neither the District Court nor the Third Circuit specified an award of actual, monetary damages to a lack of injury. Brief on Behalf of Debtor at 9. This, however, does not coincide with the Supreme Court's decision in *Cohen v. de la Cruz*, 523 U.S. 213 (1998) and the ensuing application of the Court's decision to § 523(a)(6) cases. As the Ninth Circuit noted in *In re Suarez*, 400 B.R. 732 (B.A.P. 9th Cir. 2009), "[t]he *Cohen* court construed the phrase 'debt for' used throughout the various subsections of § 523 to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like, 'connoting broadly any liability arising from the specified object . . . .' The Supreme Court did not write that monetary damages were necessary to its decision." 400 B.R. at 741 (Jury, J. concurring) (quoting *Cohen v. de la Cruz*, 523 U.S. at 220). The Ninth Circuit found, in *Suarez*, that "attorneys fees and costs awarded to a judgment creditor in relation to a debtor's underlying willful and malicious contemptuous conduct, even when no compensatory judgment debt exists, constitute[s] a nondischargeable debt under section 523(a)(6)." *In re Suarez*, 400 B.R. at 740. As in

*Suarez*, the injury here is not the attorneys' fees, but that the fees are a 'debt as a result of,' or 'debt by reason of,' the violation of the injunction and trademark infringement.

Furthermore, as previously noted in connection with this Court's discussion of Singer's malicious conduct, Singer's act of purposeful trademark infringement "amounts to irreparable injury as a matter of law." *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d at 125;  *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d at 237; *S&R Corp. v. Jiffy Lube Int'l Inc.*, 968 F.2d at 378.  As was noted by the Bankruptcy Court below, the court in *In re Braun*, considered the issue under similar facts and found that "copyright infringement is a categorically harmful activity."  327 B.R. 447, 451 (Bankr. N.D. Cal., 2005).  As the *Braun* court noted, unlike other injuries which may be the result of negligence, "harm necessarily follows from the act of infringing regardless of the infringer's state of mind when creating the infringing material." *Id*.

To support his argument that Treadwell suffered no injury, Singer again cites several cases which this Court finds inapposite to the case at bar.  In *In re Nunez*, for example, the court found no injury because the creditor was made whole on his financial losses attributable to the debtor prior to the bankruptcy proceeding.  400 B.R. 869, 878-79 (Bankr. S.D. Fla. 2008).  Citing *In re Reimer*, 182 B.R. 816, 817 (Bankr. E.D. Mo. 1995), *In re Zentz*, 157 B.R. 145, 149 (Bankr. W.D. Mo. 1993), and *DuPhily v. DuPhily*, 52 B.R. 971, 972 (D. Del. 1985), Singer interprets the proposition that "dischargeability of ancillary obligations such as attorney's fees turn on the dischargeability of the underlying debt," to mean an underlying debt is required.  *See* Brief on Behalf of Debtor at 11 (quoting *DuPhily*, 52 B.R. at 978).  This interpretation is incorrect, as courts have held attorneys' fees and statutory damages to be nondischargeable without any additional

15

underlying debt.  *See In re Suarez*, 400 B.R. at 740-41, *In re Braun*, 327 B.R. at 452-53, *In re Lubanski*, 186 B.R. at 167-68.  This Court finds the Singer's trademark infringement alone is sufficient evidence of injury for the purposes of § 523(a)(6).[2]

### IV.  CONCLUSION

For the foregoing reasons, the Court will affirm the December 2, 2009 Order of the Bankruptcy Court.

    s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: September 17, 2010

---

[2] Additionally, courts, recognizing the difficulty in quantifying trademark infringement damages, have found debt from statutory damages nondischargeable, despite not establishing actual damages.  *See In re Braun*, 327 B.R. at 451 (finding statutory damages and attorney's fees nondischargeable because debtor's copyright infringement constituted willful and malicious injury); *In re Lubanski*, 186 B.R. at 167.

16